**ARMOUR & CO. v. MOORE et al.**
No. 35929.

Supreme Court of Oklahoma.
April 13, 1954.
Rehearing Denied May 11, 1954.

Butler, Rinehart & Morrison, Oklahoma City, for petitioner.

Schwoerke & Schwoerke, Oklahoma City, Mac Q. Williamson, Atty. Gen., for respondents.

WELCH, Justice.

This is a proceeding by Armour and Company to review an award of the State Industrial Commission awarding compensation to respondent Doze Moore.

This is the third appeal, the first appeal, being case No. 35,147 in this court, was dismissed on the ground that no final or appealable order had been made by the Commission and the cause was remanded to the Commission for further proceedings, 206 Okl. 72, 240 P.2d 1113. Upon receipt of the mandate the case was assigned to a trial commissioner for further hearing. At that hearing the trial commissioner awarded respondent compensation for temporary and permanent disability. Petitioner appealed from that order to this court. The appeal was predicated, among other things, on the ground that respondent failed to give written notice of his injury as provided by 85 O.S.1951 § 24, and that the Commission made no finding or order excusing the failure to give such notice and that respondent's claim was therefore barred by limitation.

Respondent filed a confession of error and requested the court to remand the cause to the Commission for further proceedings and for a finding on the question of notice. The confession of error was sustained, the

award was vacated and the case remanded to the Commission for further proceedings.

On the remand the cause was assigned to a trial commissioner who in substance, found: On the 7th day of January, 1950, respondent, while in the employ of petitioner and engaged in a hazardous occupation, sustained an accidental personal injury arising out of and in the course of his employment, resulting in an injury to his left foot necessitating the amputation of the left leg; that claimant was entitled to temporary total disability from January 17, 1950, less the five day waiting period to November 1, 1950, a period of 40 weeks and two days, or the total sum of $1,008.33, and further found that as a result of the injury respondent sustained a loss of use of the left leg for which he was entitled to compensation in the sum of $4,375, and further found that claimant was excused from the requirement of giving the 30 day written notice provided by the statute for the reason petitioner was not prejudiced by failure of respondent to give such notice. Petitioner brings the case here to review this award.

The record discloses that no new evidence of any kind was offered by respondent at this hearing. It appears from the recitation made in the findings and award of the commissioner that he based his findings and the award in the present case on the evidence taken at the prior hearings.

It is the contention of petitioner that the only matter now before this court for consideration consists of the record made at the present hearing and since no evidence was offered at such hearing to sustain the finding and award of the trial commissioner, this court has no alternative but to vacate the order and dismiss respondent's claim. We do not agree.

We think the commissioner in the absence of objection on the part of petitioner had the right to consider and treat the evidence offered in the prior hearings as evidence in the present hearing. Moreover, petitioner, by reference, makes the record on appeal in case No. 35,147 part of the record on this appeal. We shall therefore treat the record made on the prior appeals as part of the record on the present appeal

and proceed to determine the case on its merits.

The evidence shows that respondent on the 7th day of January, 1950, while in the employ of petitioner and engaged in the course of his employment, sustained an injury to his left foot consisting of a frozen foot resulting in the amputation of his left leg below the knee. His work consisted of packing beef in sacks and pushing it in the cooler rooms and hanging it on rails and working on the dock, loading beef in refrigerator cars. The temperature on that morning at the time he started to work was thirty degrees in the cooler room and about thirty-two degrees on the dock; that the outside temperature rose during the day to about forty-five degrees. He started work that morning about 9 o'clock. The wind was blowing strong from the north and was of blizzard proportion; that about 10:30 his foot became cold and numb. He continued to work, however, during the day and worked rather late that night. He left for home about dark. When he arrived at his home he tried to thaw out his foot, but without success. The foot just kept cold. It was frozen. He went to a doctor who diagnosed his case as rheumatism and treated him for that disease. The treatment however did not help him. He was then taken to a hospital at Oklahoma City where he was examined by several physicians and was later advised that it would be necessary to amputate his foot; an operation was thereafter performed and his left leg was amputated below the knee. He had been working for Armour and Company for about sixteen years and had never experienced any trouble with his foot or leg prior to January 7, 1950, the day on which he froze his foot.

The medical evidence consists of the testimony of two physicians. One of these physicians, Dr. O. testified that at the request of Dr. K. he saw respondent at the hospital on March 14, 1950. Dr. K. had then been treating him for diabetes. He was then suffering with a gangrenous condition of his left foot and after consultation with other physicians they concluded it was necessary to operate and amputate the foot, but because of poor circulation in the lower part of the leg it was necessary to amputate the leg below the knee. The operation was performed on the 11th day of April, 1950. The doctor further testified that after obtaining a history of the case from respondent, and as the result of his own examination, he was of the opinion that the extreme cold to which respondent was subjected and the conditions under which he was required to work on January 7, 1950, was the precipitating, aggravating factor that brought about the gangrenous condition of the foot and made it necessary to amputate the leg. He further testified that a person standing on his feet from three to four hours a day in a temperature ranging from 30 to 40 degress might freeze his foot which would cause a gangrenous condition of the foot and make amputation necessary. The other physician testified to the contrary. He saw no connection between the conditions under which respondent was required to work and the gangrenous condition of the foot; that such condition was due to other causes.

Petitioner contends that the evidence is insufficient to sustain the finding of the commissioner that the injury sustained by respondent constituted an accidental injury within the meaning of the Workmen's Compensation Law. We do not agree.

In City of Muskogee v. Bebee, 193 Okl. 311, 142 P.2d 859, we held:

"If the place of the employee's work, by reason of its location and nature, would likely expose him to the danger of bodily injury by freezing, or if the risk of bodily injury by freezing is naturally connected with and reasonably incident to his employment, as distinguished from the ordinary risk to which the general public is exposed from climatic conditions, the master will be liable for the consequential injuries."

The evidence establishes that respondent's duties required him to sack beef, hang it on rails in the cooler room and load beef in refrigerator cars. In performing this work he was required to remain stationary on his feet; for most of the time his feet remained inactive. The manner in which he was required to perform his work placed

**306**

him in a position in which he could not properly exercise his feet.

 We think the evidence sufficient to establish that the place of respondent's work by its location and nature exposed him to the danger of freezing his foot in a greater degree than the general public was exposed from climatic conditions and is therefore sufficient to sustain the finding of the commissioner that the injury sustained constituted an accidental injury.

While Dr. O. testified that the exposure to the cold might not have caused the gangrenous condition of respondent's foot if he had not been suffering from diabetes which had not then fully developed, he further testified that the exposure to the cold was the thing which precipitated, aggravated and brought about the condition which made it necessary to amputate the leg.

 It is well established that an accidental injury sustained by a workman engaged in a hazardous occupation within the Workmen's Compensation Law which aggravates and produces activity of a latent or dormant disease thus creating a disability which did not previously exist is compensable. United States Gypsum Co. v. Martin, 206 Okl. 246, 242 P.2d 730; M. & W. Mining Co. v. Lee, 199 Okl. 76, 182 P.2d 759.

 It is further contended by petitioner that the evidence is insufficient to sustain the finding of the commissioner that it was not prejudiced because of failure of respondent to give notice of his injury as required by statute. 85 O.S.1951 § 24. In this respect respondent testified that the morning after he sustained his injury he notified Mr. Field, the "boss man" that he had frozen his foot the day before; that on the 12th day of January, 1950, he went to the first aid station and reported his injury to the nurse in charge, the person to whom employees were directed to report injuries sustained by them while at work, and told her that on the 7th day of January he had frozen his foot and that she gave him some liniment to put on his foot; that on the 17th day of January he notified the Assistant Manager in charge that he froze his foot on the 7th day of January, and re-

quested medical treatment. The manager replied that he could do nothing for him, but when he got well to return to work. We think the above evidence sufficient to sustain the finding of the commissioner that petitioner suffered no prejudice by reason of the failure of the respondent to give it the written notice provided by statute.

The finding will therefore not be disturbed on review. Skelly Oil Co. v. Grimm, 196 Okl. 122, 163 P.2d 234.

Award sustained.

HALLEY, C. J., JOHNSON, V. C. J., and CORN, DAVISON, O'NEAL, WILLIAMS and BLACKBIRD, JJ., concur.